IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. No. 08-062-SLR |
| | ) |
| KENNETH YOUNG, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On April 10, 2008, defendant Kenneth Young was indicted by a grand jury for possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (D.I. 10) The charges emanate from evidence obtained pursuant to a stop of defendant by members of the Wilmington Police Department ("WPD") on March 23, 2008. Defendant moves for suppression of evidence, arguing the evidence was obtained as the result of an illegal search and seizure and that his statements to law enforcement officers should be suppressed because he did not make a knowing, intelligent or voluntary waiver of his *Miranda* rights. (D.I. 12) An evidentiary hearing was conducted on September 4, 2008.[1] (D.I. 24) The matter is fully briefed. (D.I. 21, 22, 23) The

---

[1] Testifying on behalf of plaintiff were Wilmington Police Department ("WPD") officer Miguel Silva ("Silva"), Lieutenant Matthew Kurten ("Kurten"), and Detective Stephen Morrissey ("Morrissey").

court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion will be denied.

## II. FINDINGS OF FACTS

Pursuant to Federal Rules of Criminal Procedure 12(d), the following constitutes the court's essential findings of fact.

1. On March 23, 2008 at approximately 3:40 a.m., Silva[2] was on uniformed patrol in the area of North Clayton Street, Wilmington, Delaware. (D.I. 24 at 3, 11) Silva was "holding the scene" of an unrelated shooting incident at the 300 block of North Clayton Street. (*Id.* at 3) While standing in the middle of Third Street, Silva heard six to eight gun shots[3] coming from his north side. (*Id.* at 4, 9, 17) Silva ran toward the direction of the gunfire. (*Id.* at 23)

2. Within seconds, Silva observed, from about 500 feet away, two black males ("the males") walking quickly[4] from Clayton Court Apartments, heading eastbound (*Id.* at 5, 9-11, 23-24, DX2, DX3) The males looked directly at Silva as they got into a

---

[2]Silva has been a WPD police officer for three years. (*Id.* at 4-5)

[3]Based on his training and experience, Silva was able to identify the sounds as gunfire. (*Id.* at 5)

[4]Silva testified that the males were "running towards - - running from the Clayton Court Apartments" and that they "jumped into a vehicle." (*Id.* at 4) In his police report, Silva described the males as "walking at a fast speed out of the Clayton Court Apartments and looking toward [Silva's] direction. [Silva] maintained eye contact at their unusual behavior and observed the suspects enter an unknown vehicle that was parked on the west side of the street in the 500 block of North Clayton Street." (*Id.* at 13) Silva also testified that, as the males approached the car, they were holding their waists. (*Id.* at 4) Silva's police report, however, does not mention the males holding their waists. Silva attributed the differences between his testimony and the police report to poor grammar and "pretty much how [he] tends to write things." (*Id.* at 14)

parked car ("the car") and drove away, heading north on Clayton Street before turning right on West Sixth Street. (Id. at 6, 11) Besides the car, there was no other traffic or individuals outside at that time. (Id. at 8) Although it was dark, the street lights provided illumination. (Id. at 10) Having concluded that the males were acting suspiciously, Silva called in for assistance and conveyed what he had witnessed, including the direction the car was traveling. (Id. at 6- 7)

3. Kurten[5] was driving an unmarked police vehicle in the area of Third and Clayton streets when he heard Silva's radio broadcast.[6] (Id. at 26-27) At about the same time, Kurten observed the car and immediately started following it. (Id. at 28, 32) The car was the only moving vehicle on the road and there were no individuals walking in the area. (Id. at 28-29)

4. Kurten followed the car for about eight blocks until back-up assistance arrived. (Id. at 28, 34) Kurten activated his lights and stopped the car on the 400 block of North Jackson Street. (Id. at 29, 33) He initiated the stop based on Silva's radio transmission and his belief that the car's occupants may have been involved in the gun shots fired earlier. (Id. at 29, 34)

5. Kurten quickly exited his vehicle and approached the car's driver's side. (Id. at 30-31) Kurten immediately saw a silver revolver near the gearshift. (Id. at 31) For

---

[5]Kurten has been a WPD police officer for nine years. As a lieutenant, he is in charge of the whole patrol platoon. (Id. at 25-26)

[6]Kurten heard Silva "broadcast over the main radio channel that [Silva] [had observed] two subjects enter a car and leave the scene." (Id. at 32)

officer safety, Kurten announced that there was a gun in the car. Officers took the car's two occupants into custody without incident.[7] (*Id.* at 31)

6. Defendant was interviewed at the Criminal Investigative Division of WPD by Detective Morrissey[8] and Detective Wilfredo Campos (collectively, "the detectives"). (*Id.* at 35, 37, GX1) The interview was videotaped and held in a small room with defendant seated at a table across from the two seated detectives. (D.I. 24 at 37) Morrissey advised defendant of his *Miranda* rights[9]. (GX1 at 3:31) Defendant verbally acknowledged an understanding of these rights. (*Id.*) He waived his *Miranda* rights and agreed to speak with the detectives. (*Id.* at 3:31, 3:46 - 4:08) After several minutes of questioning by the detectives, defendant indicated he had no information and the interview stopped. The interview last approximately ten minutes. (GX1 at 10:27)

## III. CONCLUSIONS OF LAW

### A. The Stop

1. Once a defendant challenges the legality of a warrantless search and seizure, the burden is on the government to demonstrate that the acts were constitutional.

---

[7]Defendant was identified as the driver of the car. (*Id.* at 31-32)

[8]Morrissey has been a WPD police officer for over twelve years. (*Id.* at 35) His responsibilities include investigating "most felonies, burglaries, robberies, shootings, up to [and] including homicides." (*Id.*) In the course of his law enforcement career, Morrissey has read suspects their *Miranda* warnings at least 200 times. (*Id.* at 36)

[9]The videotape depicts Morrissey advising defendant of: (1) his right to remain silent; (2) that any statement he does make may be used as evidence against him; and (3) that he has a right to an attorney and if he could not afford an attorney one would be provided by the state.

4

*United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995); *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). The burden of proof is a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974). The government bears the burden of showing, by a preponderance of the evidence, that any statements made to law enforcement were voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

2. The Fourth Amendment of the United States Constitution prevents "unreasonable searches and seizures."[10] A seizure made pursuant to a warrant based on probable cause is generally reasonable. *Katz v. United States*, 389 U.S. 347, 356-357 (1967). Warrantless searches are presumed unreasonable. *Id.* Evidence obtained pursuant to a warrantless search that does not meet an exception to the warrant requirement must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *United States v. Brown*, 448 F.3d 239, 244.

3. Reasonable suspicion is required to support an investigatory traffic stop under the Fourth Amendment. *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (joining other circuit courts in concluding that "probable cause" not required as predicate for traffic stop). "Normally, reasonable suspicion to stop a vehicle and detain its occupants usually flows from a police officer's contemporaneous observation of a

---

[10]"The initial step of a Fourth Amendment suppression analysis requires us to determine the timing of the seizure." *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008). The Fourth Amendment becomes relevant the moment the seizure occurs. *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006).

violation of motor vehicle laws." *United States v. Johnson*, Crim. No. 08-CR-18, 2008 WL 4287288 (M.D. Pa Sept. 17, 2008).

      4. To determine whether the reasonable suspicion standard has been satisfied, courts must look at the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981). Police officers must be allowed to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Although "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," the law does not require officers "to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Furthermore, the time of day and geographic proximity of the vehicle to the scene of the crime are also factors to consider in the totality of circumstances analysis. *United States v. Goodrich*, 450 F.3d 552, 561 -62 (3d Cir. 2006) ("the lateness of the hour of the stop further supports the inference of criminal activity, especially when considered alongside the area's reputation for criminal activity.").

      5. The record reflects that in the early morning hours, while participating in an unrelated investigation, Silva heard several gun shots and ran toward the direction of the sounds. He immediately saw two males walking quickly toward a parked car and then drive away. Although the area was dark, the illumination provided by street lights enabled Silva to observe the males and to note the absence of any other individuals or moving cars in the area. Silva found the males' behavior suspicious and, based largely

on this determination, Kurten initiated a stop of the car. Considering these factors in tandem, the court finds the stop of the car was supported by reasonable suspicion to suspect defendant was involved in criminal activity. To that end, specifically compelling were the time of day, the proximity of the car to where the gunfire emanated, and the pace by which the males walked to the car and drove from the area.

6. Having found reasonable suspicion to justify the stop of the car, the court finds the gun admissible because it was discovered in plain view. "It has long been settled that objects falling in the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be introduced into evidence." *Harris v. United States,* 390 U.S. 234, 236 (1968). If any item is in plain view, mere observation of that item by a police officer does not constitute an invasion of privacy protected by the Fourth Amendment. *Horton v. California*, 496 U.S. 128, 133 (1990).

### B. The Statements

7. The Fifth Amendment to the United States Constitution, which applies to the States by way of the Fourteenth Amendment, provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const. Amend. V; U.S. Const. Amend. XIV; *Malloy v. Hogan*, 378 U.S. 1 (1964). The seminal case, *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), provides that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does

7

make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

8. A defendant can waive his Miranda rights, "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. To be valid: (1) "the waiver must have been voluntary 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception'" and (2) "the waiver 'must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

9. The videotape of the interview reflects to the court's satisfaction that Morrissey, in a clear manner, advised defendant of his *Miranda* rights and that defendant stated he understood those rights and agreed to speak with the detectives. Defendant's acknowledgment of his understanding these rights, as well as his waiver, were unequivocal. Nothing in defendant's statements, demeanor or conduct suggest that he did not voluntarily, knowingly or intelligently waive those rights. Moreover, the interview ended as soon as defendant no longer wanted to speak to the detectives.

## IV. CONCLUSION

At Wilmington this 21st day of November, 2008,

IT IS ORDERED that:

1. Defendant's motion to suppress is denied. (D.I. 12)

2. A telephonic status conference is scheduled for **Wednesday, December 3, 2008** at **9:00 a.m.**, with the court initiating said call.

3. The time between this order and the telephone conference shall be excluded under the Speedy Trial Act in the interests of justice. 18 U.S.C. § 3161(h)(8)(A).

                                                _____
                                                United States District Judge